UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Marion B. Dillman on Behalf of Herself and all Others Similarly Similarly Situated,   )<br>)<br>Plaintiff,   )<br>)<br>)<br>v.   )<br>)<br>JP Morgan Chase Bank, N.A.,   )<br>)<br>Defendant.   ) | Civil No. 11-102<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Marion B. Dillman ("Plaintiff"), individually and on behalf of all others similarly situated, alleges based upon personal knowledge, the investigation of her counsel, information and belief, and publicly available information as follows:

### NATURE OF THE ACTION

1. This action is brought by Plaintiff, on her own behalf and on behalf of a class of consumers seeking redress under the Federal Truth-in-Lending Act, 15 U.S.C. 1601 et seq., Regulation Z, 12 C.F.R. § 226.1, et seq., and state law for violations of their rights under the Act, its implementing regulations and their home equity line of credit ("HELOC") plans. The defendant, JP Morgan Chase Bank, N.A. ("Chase" or "defendant"), unilaterally modified their HELOCs in violation of 15 U.S.C. § 1647(c), Regulation Z, 226.5(b)(f) and in violation of their contracts. Ms. Dillman individually and on behalf of a class is also seeking relief under 15 U.S.C. § 1666 seq.

1

## JURISDICTION AND VENUE

2.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under the Federal Truth-in-Lending Act, 15 U.S.C. § 1601 seq., 15 U.S.C. § 1647, 15 U.S.C. § 1666, and 12 C.F.R. § 226.5(b).

3.      This Court has supplemental subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367.

4.      In the alternative, the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2). This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendant. On information and belief, the aggregate of these claims exceeds the sum or value of $5,000,000.

5.      Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

## THE PARTIES

6.      Plaintiff, Marion B. Dillman, is a resident of Baldwin County, Alabama.

7.      Defendant, Chase, is a national banking association that does business in this district.

## FACTUAL ALLEGATIONS

8.      On October 14, 2003 Ms. Dillman entered into a HELOC plan with Washington Mutual Bank FA.

9.      In connection with the HELOC Ms. Dillman was issued a credit card with which she could access her credit line for cash advances and make purchases.

2

10. Page four (4) of her home equity plan provided the details of how the payments will be applied against the outstanding balance of the loan and stated, "Payments received will be applied against your outstanding balance in the following order: to accrued but unpaid finance charges, then to late fees, then to other fees and charges, then to principal not yet due."

11. Ms. Dillman's HELOC plan also called for a "draw period" of 10 years. During the draw period her minimum monthly payment was equal to the accrued interest for the preceding month. If she paid more than the minimum, the extra portion was to be applied as stated above.

12. On September 25, 2008, the United States Office of Thrift Supervision (OTS) seized Washington Mutual Bank from Washington Mutual, Inc. and placed it into the receivership of the Federal Deposit Insurance Corporation (FDIC) and Ms. Dillman's account was thereafter acquired by Chase.

13. Ms. Dillman received a letter from Chase, dated October 10, 2008, notifying her of the transfer. The correspondence contained the following language: "This assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage documents, other than terms directly related to the servicing of your loan."

14. On numerous occasions, after the acquisition of her HELOC by Chase, Ms. Dillman used her credit card associated with her HELOC plan and thereby received extensions of credit from Chase subject to the terms of her plan.

15. During the period from October 2008, up until on or about August 2009, Chase continued to use the name Washington Mutual on her statements.

16. For next several months, Ms. Dillman made her payments and Chase credited them to her account pursuant to her HELOC plan.

17. On or about November 2009, Ms. Dillman noticed on her statement that Chase had started crediting her payments differently. Instead of applying her payments, "first to accrued but unpaid finance charges, then to late fees, then to other fees and charges, then to principal not yet due," Chase applied a portion of her payment to un-accrued interest. This was in violation of the terms of her HELOC plan.

18. For example, her statement covering the period from August 13, 2010 through September 11 2010 reflected a minimum payment of $56.96 and Ms. Dillman made a payment of $125.00. The statement shows the following:

### Activity Since Your Last Statement

| Post Date | Description | | Payments/Credits | Debits/Advances/Fees | Principal Balance After Transaction |
|---|---|---|---|---|---|
| 08-13-10 | Balance Forward | | | | $36,301.09 |
| 08-13-10 | Beginning ANNUAL PERCENTAGE RATE Periodic Rate .00008904 | 3.25% Daily | | | |
| 08-13-10 | Friendly Fisherman Rest   Madeira Beach Fl On 0811 | | | $34.03 | $36,335.12 |
| 08-24-10 | Publix #1265   Fairhope   Al On 0823 | | | $57.00 | $36,392.12 |
| 09-03-10 | Payment - Thank You (Interest $125.00) | | -$125.00 | | $36,392.12 |
| 09-11-10 | FINANCE CHARGE (Interest) Accrued 08-13-10 Thru 09-11-10 | | | $97.15 | |
| | Total | | $125.00 | $188.18 | $36,392.12 |

| Current Statement Balance | = | Current Fees and Finance Charges | + | Previous Unpaid Fees and Finance Charges | + | Principal Balance |
|---|---|---|---|---|---|---|
| $36,449.08 | | $56.96 | | $0.00 | | $36,392.12 |

19. The current finance charge and fees equaled $56.96. With a payment of $125.00 the remainder, $68.04, should have been applied to principal. Instead, as shown above, the entire $125.00 was applied to interest.

20. Concerned about the application of her payments during November 2009, Ms. Dillman wrote Chase, at the address it designated for billing disputes, and complained that the payments were not being credited properly. Ms. Dillman received a reply from Chase which instructed her to make separate payments and direct one to principal only, which she did to no avail.

4

21. The misapplication of her payments continued and Ms. Dillman wrote Chase again on March 1, 2010, at the address designated by Chase for billing disputes. Chase replied on March 23, 2010, giving her a separate address to make principal only payments and instructing her that she could, "indicate on her payment coupon or check, the amount that should be applied as additional principal."

22. Ms. Dillman, again, followed these instructions, sending in payments with instructions to apply a portion to principal and even making separate payments indicating that one of them was a principal payment. However, Chase continued to apply her payments in a manner that is in violation of her HELOC plan.

23. The application of the payments scheme used by Chase is designed to maximize interest charges and to impede the early payoff of HELOC plans.

## COUNT ONE
## THE FAIR CREDIT BILLING ACT

24. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

25. Chase is a "creditor" as that term is defined at 15 U.S.C. 1602(f). Chase is also a "card issuer" within the meaning of 12 C.F.R. § 226.2(a)(7).

26. Plaintiff is a "consumer" and "card holder" within the meaning of 12 C.F.R. § 226.2(a)(8) and (11).

27. Plaintiff's dispute of the above-mentioned misapplication of payments constitutes a notice of a "billing error" within the meaning of 15 U.S.C. § 1666(b).

28. Plaintiff delivered notice of a billing error dispute within the meaning of 15 U.S.C. § 1666(a).

29. Chase failed to comply with the requirements of the FCBA in one or more of the following ways:

    a. It failed to comply with appropriate error dispute resolution procedures;

    b. Failed to conduct any reasonable investigation of the dispute; and

    c. Failed to correct the error.

30. As a proximate result of this conduct, Plaintiff suffered actual damages.

Wherefore plaintiff demands a judgment for actual damages, statutory damages, attorney's fees and costs.

## COUNT TWO
## VIOLATION OF TILA AND REGULATION Z

31. Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

32. Chase's continuing misapplication of payments, as stated above, constitutes a unilateral change in the terms of Plaintiff's HELOC plan.

33. The Truth-in-Lending Act, at 15 U.S.C. § 1647(c), prohibits such a unilateral change in the terms of a HELOC plan.

34. Chase's conduct is also in violation of Regulation Z at 12 C.F.R. § 226.5b(f)(3).

35. Chase's violations of TILA and Regulation Z damaged Plaintiff. These damages occurred in the form of the increased price of credit in the form of additional interest.

Wherefore Plaintiff claims actual damages, statutory damages and costs of the action, together with reasonable attorneys' fees.

## COUNT THREE
## BREACH OF CONTRACT

36. Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

37. Plaintiff obtained a HELOC plan from Washington Mutual. As the assignee of the plan and pursuant to the notice sent to Plaintiff, the terms of the HELOC plan constitute a contract between Plaintiff and Chase.

38. Chase materially breached the terms of the HELOC plan by misapplying Plaintiff's payments as stated above.

39. As a result of Chase's conduct Plaintiff has suffered damages.

Wherefore Plaintiff seeks damages for Chase's breach of contract, as well as interest and attorneys' fees and costs.

## COUNT FOUR
## BREACH OF IMPLIED COVENANTS

40. Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

41. The terms of Plaintiff's HELOC plan constitute a contract between her and Chase.

42. Implicit in the HELOC agreement are contract provisions that prevent Chase from engaging in conduct which frustrates Plaintiff's rights to the benefits of the contract or which would injure the right of the plaintiff to receive the benefits of her HELOC.

43. The application of payments clause is a material term of the HELOC plan.

44. Chase breached the implied covenant of good faith and fair dealing by changing the application of the payments Plaintiff in violation of her HELOC plan.

45. Implicit in the HELOC agreements were contract terms that required Chase to follow Regulation Z.

46. Chase's breach of Regulation Z and the HELOC covenants caused Plaintiff incur damages.

Wherefore Plaintiff demands damages for Chase's breach of the implied covenant of good faith and fair dealing, as well as interest and attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

46. Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

47. Plaintiff brings this action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States who had a HELOC plan with Washington Mutual that:
>
> 1. Was acquired by Chase on or after September 25, 2008; and
>
> 2. Contained a payment clause requiring payments to be applied to accrued but unpaid finance charges, then to late fees, then to other fees and charges, then to principal not yet due; and
>
> 3. Chase applied a portion of their payments to un-accrued interest.

48. Plaintiff also brings this Complaint against Chase on behalf of a FCBA subclass (the "Billing Act Subclass") consisting of:

> All Class Members in the United States who disputed the application of their payments as required by 15 U.S.C. § 1666(a) and the application of their payments was not corrected.

49. Excluded from the Class and the Notice Subclass is Chase and its respective parents, subsidiaries, and affiliates, any judge or magistrate presiding over this action and members of their families, as well as any governmental entities.

50. Plaintiff does not know the exact size of the Class or subclass since such information is exclusively in the control of Chase. Plaintiff believes that there are hundreds of thousands of Class members, and that they are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

51. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all Class members were damaged by the same wrongful conduct of Chase as alleged in this Complaint.

52. Plaintiff will fairly and adequately protect the interests of the Class. The interests of Plaintiff coincide with and are not antagonistic to those of the Class. In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex consumer class action and complex class action litigation.

53. There are questions of law and fact common to the members of the Class, and those common questions predominate over any questions which may affect only individual members of the Class, because Chase has acted on grounds generally applicable to the entire Class. Among the predominant questions of law and fact common to the Class are:

   a. The frequency and persistence of failures of compliance by Chase;

   b. The resources of Chase;

   c. The number of persons adversely affected;

   d. The extent to which Chase's failure of compliance was intentional;

   e. The process, procedures, and guidelines pursuant to which Chase implemented and conducted its billing act investigations; and

   f. Whether Plaintiff and the Class members are entitled to additional relief, and the nature of such relief.

54. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

55. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

56. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative exists for the fair and efficient adjudication of this controversy on behalf of Plaintiff and the members of the Class.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders against Chase as follows:

1. Certifying the action as a class action and designating Plaintiff and her counsel as representative of and counsel for the Class and Subclass;

2. Statutory damages under 15 U.S.C. § 1640(a)(2)(B);

3. Actual damages in an amount to be proved at trial;

4. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues so triable.

_/s/ signature_

EARL P. UNDERWOOD, JR.
KENNETH J. RIEMER
Underwood & Riemer, PC
Attorneys for the Plaintiff
21 South Section Street
Fairhope, Alabama 36532
(251)990-5558 Voice
(251)990-0626 Fax